ROSE *v.* CLIFFORD.

ROSE *v.* NEWELL.

CLIFFORD *v.* ROSE.

CLIFFORD *v.* NEWELL.

---

PATENTS; INTERFERENCE; REDUCTION TO PRACTICE; DILIGENCE.

1. Where an invention relating to an improvement in water coolers was involved in three interferences, it was *held*, on a review of the evidence,

that one of the three parties had established conception of the invention and its reduction to practice prior to the dates alleged by the other parties, and was entitled to an award of priority, making it unnecessary to review the controversy between such other parties.

2. After reduction to practice of an invention, the mere delay of the inventor to apply for a patent, in the absence of concealment, abandonment, or suppression, will not prevent him from getting a patent based upon priority of invention. Having reduced his invention to practice, he is entitled to two years in which to put it in public use and on sale without a forfeiture of his right to receive a patent, based upon an application filed before the statutory bar has arisen. (Following *Rolfe* v. *Hoffman,* 26 App. D. C. 336.)

Nos. 460, 461, 463 and 464. Patent Appeals. Submitted March 11, 1908. Decided April 7, 1908.

HEARING on four appeals from decisions of the Commissioner of Patents in three separate interferences.          *Affirmed.*

The facts are stated in the opinion.

*Mr. J. D. Sullivan, Mr. Willis Fowler,* and *Mr. Charles Weaver* for A. N. Rose.

*Mr. A. S. Pattison* and *Mr. Philip Mauro* for Isaiah Newell.

*Mr. J. H. Griffin* and *Mr. Henry E. Davis* for E. C. Clifford.

Mr. Justice VAN ORSDEL delivered the opinion of the Court:

These appeals come here from decisions rendered by the Commissioner of Patents in three separate interferences. Interference No. 23,780 involves all three of the parties, A. N. Rose, E. C. Clifford, and Isaiah Newell. Both Rose and Clifford have appealed from the decision in this interference. Interference No. 23,781 involves only Clifford and Newell, from which decision Clifford has appealed. Interference No. 23,782 involves Rose and Newell. From this decision, Rose has appealed. The Commissioner of Patents awarded to Newell priority of invention on the following issue:

"1. In a device of the class described, a cooling chamber provided with an opening in its upper part, a liquid receptacle provided with an opening, a container placed with its open mouth extending through said openings in the cooling chamber and said receptacle and adapted to be sealed by liquid in said receptacle, and means for drawing off liquid from said receptacle.

"2. In a device of the class described, a cooling chamber, a liquid receptacle exposed to the action of said cooling chamber, and provided with an opening in its upper part, a container placed with its open mouth projecting downwardly into said opening in the liquid receptacle and adapted to be sealed by liquid therein, and means for drawing off liquid from said receptacle."

The invention here in issue relates to an improvement on water coolers, having a receptacle for water within a chamber for ice, so arranged that the receptacle containing the water is surrounded with ice. The water is drawn from the receptacle by means of a pipe, to which a faucet is attached. The receptacle is supplied with water from a bottle filled with water, and inverted so that the mouth of the bottle extends through a funnel, in which the inverted bottle rests, into the receptacle. The water passes from the bottle into the receptacle until it rises to a level with the mouth of the bottle, when the liquid seals the mouth of the bottle. When water is drawn from the faucet, the water is lowered in the receptacle until the air is permitted to enter the mouth of the bottle, when the water again flows into the receptacle and so continues until it rises to the mouth of the bottle and seals it.

Rose alleges conception of the invention in August or September, 1901, and reduction to practice in February, 1902. His application was filed March 26, 1902. Clifford alleges conception in November, 1901, and reduction to practice in February, 1902. His application was filed April 14, 1902. Newell alleges conception and disclosure in the spring of 1899, and reduction to practice in the early summer of 1899. His application was filed July 22, 1902. It will be observed that Rose is the sen-

ior party in point of filing, and Newell is the junior party. Originality of invention is the issue involved between Clifford and Rose. Newell is an independent inventor, and claims to have conceived the invention and reduced it to practice prior to the date of conception alleged by either Rose or Clifford.

The Examiner of Interferences found that Newell had not completed his invention at the date Rose filed his application, and that, as between Rose and Clifford, Clifford was the original inventor. He accordingly awarded priority to Clifford. The Board of Examiners-in-Chief reversed the Examiner, and awarded priority to Newell. The Commissioner of Patents affirmed the decision of the board. Inasmuch as the same invention is involved in all three applications, it is important to consider, first, whether Newell established his conception of the invention and its reduction to practice prior to the dates alleged by Rose and Clifford. If he did, and is not estopped by concealment, suppression, or abandonment, it will be unnecessary to enter into the controversy between Rose and Clifford.

Newell fixes the date of conception of his invention from the fact that in 1899 he was engaged in the business of making shoe heel in a small shop on Wingate street, Haverhill, Massachusetts. About this time he went into the distilled-water business. In looking about for a device by which the distilled water could be cooled without the ice coming in direct contact with the water, he conceived the invention here in issue. He states that he purchased a still in the summer of 1899, and began selling distilled water the same fall. He also testified that he moved his place of business from Wingate street to Washington street, Haverhill, along about September 1, 1900. This date is verified by the introduction of his ledger showing an account with his Washington street landlord, in which it appears that he paid his first month's rent in October, 1900. No objection was made to the introduction of this ledger in evidence.

A number of coolers were introduced in evidence by Newell. Exhibit No. 1 consisted of a coil of pipe extended through the ice receptacle, with a funnel at its upper end to receive the neck of the inverted bottle. Exhibits 2 and 3 contained different

forms of receptacles for the water. Exhibit No. 4 contained a glass receptacle. Newell testified that he made these four exhibits and used them in his shop on Wingate street. He afterwards corrected his evidence as to exhibit No. 4, and stated that it was exhibit No. 4a that was used on Wingate street, and, from reference to certain bills he found, that exhibit No. 4 was not made until June, 1903. Newell is corroborated as to the construction and operation of these particular exhibits by two witnesses. All of these witnesses fix dates when Newell successfully operated exhibits 1, 2, and 3, prior to any date claimed by either Rose or Clifford. These exhibits embrace the invention in controversy, which is neither complicated, nor difficult to comprehend. Without entering into an extended consideration of the evidence of the various witnesses, we can see no escape from the conclusion reached by the Commissioner of Patents. His logical and complete analysis of the evidence, appearing in his published decision, we adopt for the purposes of this opinion.

It is contended by Rose and Clifford that, even though it be conceded that Newell reduced the invention to practice by the construction and successful operation of exhibits 1, 2, and 3, prior to his removal from Wingate street, his failure to make application for a patent until July 22, 1902, amounted to an abandonment. No evidence was offered by either Rose or Clifford to establish either concealment or abandonment on the part of Newell. A large number of exhibits were offered by Newell which showed that he was engaged constantly, from the summer of 1899, up to and after the date of his application, in experimenting on and improving his original invention. As he states, he was attempting, prior to the manufacture of exhibit No. 4, in 1903, which contained a glass water receptacle, to find some kind of metal that would withstand the effect of different kinds of water. In the experiments, he states that he used distilled water, city water, and spring water. He testified that he loaned to the Essex street engine house in Haverhill a cooler of the style of exhibit No. 1, which, from reference to his books, appears to have occurred on July 1, 1901. He testifies that it was used thereafter at the engine house up to the date of taking

his evidence in this case. It will be observed that this cooler was loaned to the engine house before either Rose or Clifford alleges conception of the invention in question. Taking, therefore, any date between the fall of 1899, or the early part of 1900, when Newell testifies that he first successfully operated exhibits 1, 2, and 3, and July 1, 1901, when he loaned a cooler to the engine house, as a date for the reduction of the invention to practice, we think neither concealment nor abandonment can be charged against Newell. He was constantly and publicly operating the coolers, both at his Wingate and Washington street places. It is well settled that, after reduction to practice of an invention, a mere delay of the inventor in applying for a patent, in the absence of concealment, abandonment, or suppression, will not prevent the inventor from getting a patent based upon priority of invention. In *Rolfe* v. *Hoffman,* 26 App. D. C. 336, this court, speaking through Mr. Justice Duell, said: "That Rolfe was the first to conceive and disclose the invention to others is established beyond a doubt. His case really turns upon the weight that is to be given to his three exhibits Nos. 1, 2, and 3. These exhibits, one and all, contain the elements of each count of the issue excepting the spring or springs which support the heat cartridge. That these exhibits were made by Rolfe in December, 1901, and by him shown to Wiesinger and Schwarze about that time, is sufficiently proved and is not successfully questioned. If they constituted a reduction to practice, then Rolfe is entitled to an award of priority, for he will then have proved priority of conception, disclosure, and reduction to practice, and, in the absence of any clearly proved abandonment, his right to a patent has not become forfeited either to the public or to his rival. It is true that two years elapsed between his alleged reduction to practice and the filing of his application for patent, during which interval his rival entered the field and secured a patent. Such a period of delay, standing by itself, does not constitute an abandonment of his right to a patent based upon priority of invention. An inventor, having reduced his invention to practice, is entitled to a period of two years in which to put the same in public use and on sale without a forfeiture of his right

to receive a patent based upon an application filed before the statutory bar has arisen. Neither abandonment, nor forfeiture, within that period, can be presumed, but must be proved. True, the acts of an inventor may be such as to amount to an abandonment or forfeiture within that period, but such acts must be proved."

The facts in this case were closely analogous to those in the case at bar, except that no patent had been issued to either Rose or Clifford. Here Newell exposed his invention to the public, as shown not only by his own testimony, but by the two witnesses who testified on his behalf before the Examiner of Interferences. We think, therefore, that there is not only a failure to prove abandonment, suppression, or concealment, but it is clearly established that, during the statutory period of two years prior to the date of conception alleged by either Rose or Clifford, Newell's invention was given to the public and put into commercial use by being placed in the Essex street engine house.

It is unnecessary for us to consider the respective claims of Rose and Clifford, since this opinion relates to facts occurring before either of them claims to have had any conception of the invention in question. We are clearly of the opinion that Newell not only conceived the invention in question, but reduced it to practice before the dates of conception alleged by either Rose or Clifford. The priority of Newell has been established, and the decision of the Commissioner of Patents is affirmed. The clerk is ordered to certify these proceedings, as by statute required.                                          *Affirmed.*